## Cornell *v.* Pittsburg Railways Company, Appellant.

*Negligence—Street railways—Pedestrian—Crossing—Crossing tracks.*

1. A pedestrian when approaching a street car track upon which a car is likely to come, has not, in the absence of sudden emergency and imperious necessity, the right to dismiss all thought of danger.

2. When a man undertakes to stand upon, or walk along a street car track, with his back to a car which he saw standing within forty or fifty feet of him, and which he knows is in service, he cannot with safety "dismiss that car from his mind;" and he cannot assume, without any knowledge of the regulations of the company, that such car standing at a point where a curve left the straight track will not move around the curve; and if he does so, and steps upon the curve and is immediately struck by the car which was going so slowly that it stopped instantly after the accident, such person cannot recover damages from the street railway company for his injuries.

Argued April 22, 1913.  Appeal, No. 79, April T., 1913, by defendant, from judgment of C. P. Allegheny Co.,

March T., 1909, No. 220, on verdict for plaintiff in case of Everitt R. Cornell v. Pittsburg Railways Company. Before RICE, P. J., HENDERSON, MORRISON, ORLADY, HEAD and PORTER, JJ. Reversed.

Trespass to recover damages for personal injuries. Before HAYMAKER, J.

The facts are stated in the opinion of the Superior Court.

Verdict and judgment for plaintiff for $1,250. Defendant appealed.

*Errors assigned* were in refusing binding instructions for defendant.

*Walter M. Lindsay,* with him *Clarence Burleigh* and *William A. Challener,* for appellant.—There was no evidence of undue or negligent speed of the car, and even if there were, it would be overcome by the fact that the car stopped immediately: Moss v. Traction Co., 180 Pa. 389; Burke v. Traction Co., 198 Pa. 497; Cupps v. Traction Co., 13 Pa. Superior Ct. 630; Brown v. Traction Co., 14 Pa. Superior Ct. 594; McPhillips v. Traction Co., 19 Pa. Superior Ct. 223; Potter v. Ry. Co., 19 Pa. Superior Ct. 444; Ehrisman v. Ry. Co., 150 Pa. 180; McCracken v. Traction Co., 201 Pa. 378; Nugent v. Traction Co., 181 Pa. 160; Pieper v. Traction Co., 202 Pa. 100; Keenan v. Traction Co., 202 Pa. 107; Smathers v. Ry. Co., 226 Pa. 212.

The plaintiff's own testimony is conclusive that if he had observed the rule to look just before entering upon the track, he would have seen that the car was approaching, and so have avoided the accident: Flynn v. Pittsburg Railways Co., 234 Pa. 335; Nugent v. Traction Co., 181 Pa. 160; McCauley v. Tract. Co., 13 Pa. Superior Ct. 354; Crooks v. Rys. Co., 216 Pa. 590; Pittsburgh Rys. Co. v. Cluff, 149 Fed. Repr. 732.

*Rody P. Marshall,* with him *Thos. M. Marshall,* for appellee.

OPINION BY PORTER, J., July 16, 1913:

This is an action of trespass brought by the plaintiff to recover damages for injuries alleged to have been sustained by collision with one of the defendant company's cars, at or near the intersection of Liberty ave. with Seventh st., in the city of Pittsburg. Liberty ave., at this point, runs east and west and Seventh st. enters it at right angles and extends north to and beyond Penn ave. Sixth ave. enters the south side of Liberty ave. not directly opposite the entrance of Seventh st., but a little to the west thereof, the eastern curb line of Sixth ave. at the intersection of Liberty ave. being about opposite to the middle of the cartway of Seventh st. The defendant company has two car tracks on Liberty ave. and a like number on Seventh st. and two curved tracks, one connecting the west-bound track on the north side of Liberty ave. with the north-bound track on the east side of Seventh st. and the other connecting said north-bound track with the east-bound track on the south side of Liberty ave. The curved track first mentioned, connecting the Liberty ave. west-bound track with the north-bound track on Seventh st. diverges from the line of the straight track on Liberty ave. at a point between thirty-five and forty feet eastward of the projection of the curb line of Seventh st. as indicated by the plan offered in evidence by the plaintiff, and curving round into Seventh st. within a few feet of the curb at the intersection of the streets connects with the track on Seventh st. at a point thirty-five or forty feet north of the projection of the curb line of Liberty ave. The other curved track connects with the north-bound track on Seventh st. at the same point, but is considerably longer as it extends to the east-bound track on the south side of Liberty ave. and joins that track at a greater distance from Seventh st. Liberty ave. is eighty feet wide, forty-eight feet two inches of which is used as cartway. A number of the lines of street cars operated by the defendant company, among them the line known as the "East Liberty Express,"

were at the time of the accident operated over the west-bound track on Liberty ave. until they reached the intersection of the curved track just east of Seventh st., they then passed over that curved track to the north-bound track on Seventh st. and proceeded toward Penn ave. There is no evidence in this case indicating that the East Liberty Express cars had ever pursued any other route. A number of lines of cars, operated on Penn ave. made a loop around Sixth st. (not avenue) Liberty ave. and Seventh st., using the east-bound track on Liberty ave. until they reached the curved track, west of Seventh st. when they passed around that curved track on to the north-bound track on Seventh st., and so proceeded to Penn ave.

About ten o'clock on the morning of July 3, 1908, the plaintiff approached the south side of Liberty ave. on the sidewalk on the east side of Sixth ave. He thus states the purpose of his going: "I intended to take a car over here on Seventh st. at Penn ave. They make a regular stop at Penn ave. just a block north of this point." When he reached Liberty ave. he saw, before he left the sidewalk to cross the cartway, an East Liberty Express car standing on the west-bound track at the intersection of the curved track leading to the north track on Seventh st. and he also saw approaching from the direction of Sixth st. a car on the east-bound track, which had not yet reached the curved track leading from that track into Seventh st. The plaintiff left the sidewalk and walked across the cartway looking at each of the cars several times as he proceeded. The last time he looked at either of the cars was after he had passed both the east and west-bound tracks on Liberty ave. and was in the triangular space between those tracks and the curved track. He then looked at the East Liberty Express and says that it was still standing, at the point of the curve, he looked at the east-bound car and it was then midway of the curve. He said he was then about three or four feet from the curved track. The plaintiff had thus far done all that prudence required, he was in a place of safety and the evidence fails to indicate

that there were any vehicles in the street which threatened danger or interfered with his action. He did not stop, but under the facts presented by the evidence there was no occasion for his stopping. If he had proceeded directly across the curved track when he saw the East Liberty car standing at the entrance to that curve and proceeded to the sidewalk at the corner, the accident would have been avoided. This the plaintiff did not do. He admitted that he knew the standing car was "in service," and, knowing that, he must be presumed to have known that it would not stand still indefinitely. He said: "I thought that the East Liberty Express was going straight over here"(that is west on Liberty ave.). "At that time the Liberty Express, I was unfamiliar with the movement of it." He gave as another reason why he did not believe the East Liberty car would move around the curve: "I didn't see how there could be any possibility of its moving anyway, because this car (the east-bound car) was so near going around there that I didn't see how it could get in there ahead of it. I had dismissed that car from my mind." The plaintiff thus frankly declares that before he had reached the curved track he dismissed the East Liberty Express car from his mind. The curved track was the only one between him and the north sidewalk of Liberty ave. Having dismissed the East Liberty Express car from his mind, he, of course, took no further care to avoid a collision with it. He turned his back upon both cars and walked from six to ten feet, not towards the sidewalk but to the flag footwalk across the cartway of Seventh st., thus approaching the curved track diagonally, and having reached the crossing, he stopped for an instant, when the fender of the East Liberty Express, which was moving slowly round the curve, knocked his feet from under him and he fell against the car. He testified that the car did not move more than three or four feet after the fender struck him. "It stopped almost immediately."

The plaintiff testified that he heard no gong or other warning of the starting of the East Liberty Express car.

He had charged in his statement that the car was run at a rapid rate of speed around the curve, but the admission of the plaintiff that the car stopped almost immediately and upon cross-examination that "it stopped almost instantly," taken in connection with the uncontradicted evidence of the witnesses for the defendant that the car moved at a very slow rate, no finding that there was negligence in the rate of speed at which the car was operated could be sustained: Moss v. Traction Co., 180 Pa. 389. The failure to ring the bell, therefore, was the only allegation of negligence which there was any evidence to sustain.

The witnesses for the defendant testified that the plain- tiff crossed the street without looking where he was going, that the car was started after the gong had been rung, that the motorman seeing the danger into which the plain- tiff was heedlessly walking again rang the bell, applied his brake, and that the car was standing still when the plaintiff tripped over the fender and fell. The plaintiff did not say that he saw the car which struck him, after he had dismissed it from his mind and before the accident. If the question was whether the car was moving or stand- ing still, then, under the evidence, the case was for the jury.

The testimony of the plaintiff, by which alone his case was supported, was entirely frank. He made no attempt to disguise the fact that he had dismissed from his mind, before he reached the tracks upon which it came, the car which he had seen standing, probably forty feet away. He turned his back to the car and walked diagonally towards the track for a distance which he says did not exceed ten feet, and which brought him within the line of the track. While he was doing this the east-bound car, which he had assumed would precede the East Liberty Express, had stopped, and the East Liberty car had started and moved slowly a distance of about forty feet. He knew nothing about the regulations of the company, and there is in this case no evidence of any regulation which warranted him in assuming that the East Liberty

car would not move around the curve and precede the other car along Seventh st.   The absence of any such regulation of the company, and the fact that the plaintiff was walking along, or diagonally to the curved track, distinguishes this case from Armstrong v. Consolidated Traction Co., 216 Pa. 595.   The care which plaintiff exercised before he had reached the real point of danger cannot atone for his failure to watch the car, which he knew was there and in service, until he had reached and crossed the curved track.   The evidence as to the speed at which this car was moving makes it very clear that if this plaintiff had looked at the moment he set foot upon the track he would have seen that the car was moving towards him and without any difficulty whatever could have avoided all danger.   "A pedestrian when approaching a street car track upon which a car is likely to come has not, in the absence of sudden emergency and imperious necessity, the right to dismiss all thought of danger.

"It is the absolute duty of a traveler or the driver of a team at the intersection of two city streets upon which is laid a line of street railway to look immediately before going upon the tracks, and failure to do so is negligence per se.   If when he looks he sees an approaching car so near as to make an attempt to cross dangerous, it is his duty to stop; or, if when he looks at the edge of the tracks his view is obstructed so that he cannot see it then becomes his duty to listen, and under some circumstances it may be his duty to stop as if when he looks and listens he still is in doubt about the location and movement of the car. If in any of these situations he fails in the performance of the duty required he is guilty of contributory negligence and cannot recover.   The one positive and imperative duty always required under such circumstances is to look when the tracks are reached and immediately before attempting the crossing.   Failure to perform this absolute duty will defeat a recovery under the authority of all our cases:" Smathers v. P. & B. St. Ry. Co., 226 Pa. 212. If the plaintiff had looked before he stepped upon the

track, he would have known that the East Liberty Express car had started and was rounding the curve; Flynn v. Railways Co., 234 Pa. 335.   The fact that this was a curved track leading from one street into another did not warrant the plaintiff in assuming that the car would not take the curve, nor relieve him of the duty to look immediately before entering upon the curved track: Underwood v. Pittsburg Railways Co., 238 Pa. 332; Pittsburg Railways Co v. Cluff, 149 Fed. Repr. 732.   The rule is so well settled that further reference to authorities is unnecessary, the earlier cases will be found cited in McCracken v. Traction Co., 201 Pa. 378, and Potter v. Scranton Railway Co., 19 Pa. Superior Ct. 444.   The reasons for the rule that one about to cross must look for approaching cars immediately before entering upon the track, or at the moment of such entrance, apply with equal force to one who enters upon the track for the purpose of standing upon it, or walking along it.   When a man undertakes to stand upon or walk along a street car track, with his back to a car, which he knows is in service and within forty or fifty feet of him, he cannot with safety "dismiss that car from his mind."   The testimony of the plaintiff clearly established that his negligence contributed to producing the accident, and the defendant company was entitled to binding instructions in its favor. The specifications of error are sustained.

The judgment is reversed and the record is remitted to the court below with direction to enter judgment in favor of the defendant non obstante veredicto.

ORLADY, J., dissents.